**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CINDY JEANNE DANNETTEL,**

                **Plaintiff,**

  vs.                                      **6:12-CV-01890**
                                              **(MAD)**

**COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,**

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **DESANTIS & DESANTIS LAW FIRM**<br>286 Genesee Street<br>Utica, New York 13501-2172<br>Attorneys for the Plaintiff | **MICHAEL P. DESANTIS, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>Office of Regional General Counsel<br>Region II<br>26 Federal Plaza - Room 3904<br>New York, New York 10278<br>Attorneys for Defendant | **REBECCA H. ESTELLE, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On June 17, 2010, Plaintiff protectively filed a Title II application for disability insurance benefits ("DIB"), alleging a period of disability beginning on March 15, 2007. *See* Administrative Record ("R") at 12. On October 4, 2010, Plaintiff's application was initially denied and upon Plaintiff's request, a hearing was held on November 8, 2010. *See id.* Thereafter, the ALJ issued an unfavorable decision on December 16, 2011, finding that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). *See id.* at 9-18.

On January 3, 2012, Plaintiff timely filed a request for a review of the ALJ's unfavorable hearing decision. *See id.* at 7. The Appeals Council denied review by letter dated November 27, 2012. *See id.* at 1-3.

On December 27, 2012, Plaintiff filed a summons and complaint in this Court seeking judicial review of the Commissioner's unfavorable decision. *See* Dkt. No. 1. The Commissioner filed an answer to the complaint on April 17, 2013. *See* Dkt. No. 8.

Currently pending before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt. Nos. 11, 14.

## II. BACKGROUND

Plaintiff seeks DIB benefits alleging that she was suffering from a "disability" within the meaning of the Act since March 15, 2007, at age 54, due to multiple impairments including diverticulitis, irritable bowel syndrome, anxiety and knee and back pain resulting from an ACL tear and arthritis. *See* R. at 56-60. Plaintiff has not engaged in substantial gainful activity since her alleged onset date, but continued part-time employment as a cashier for Walmart until August 28, 2011. *See id.* at 48.

Plaintiff has a high school education with no vocational training, and a history of work as a cashier, a receptionist, customer service representative and a bank loan officer. *See id.* at 18, 50-55. Plaintiff testified that she last worked in 2011. *See id.* at 50.

### A.  **Physical conditions**

After a procedure that was performed on July 24, 2003, by Steven Z. Kussin, M.D., it was revealed that Plaintiff was suffering from pandiverticulosis. Plaintiff continues to experience the

symptoms associated with this medical condition, which include lower abdominal pain and reoccurring episodes of severe pain. *See id.* at 358. In a colonoscopy that was later performed in November 2008, Plaintiff was again shown to have pandiverticulosis and moderate to severe diverticulosis on the left side, as well as some internal hemorrhoids. *See id.* at 314. Based on the advisement of Gary Neale, M.D., on November 11, 2009, Plaintiff underwent a laparoscopic sigmoidectomy in order to remove the sigmoid colon, in an attempt to correct or minimize the symptoms that she was experiencing such as anxiety, and in order to "[a]ssist her in reducing her episodes of abdominal pain." *See id.* at 314-15, 321. Since the operation, Plaintiff has continued to experience lower quadrant pains and difficulty with her bowel movements. *See id.* at 327.

On February 18. 2010, Plaintiff underwent a total vaginal hysterectomy, an anterior and posterior repair, sacrospinous ligament fixation, colpopexy and a cystoscopy, which were conducted by Prabhat Ahluwalia, M.D., in order to treat her mild uterine prolapse and the associated discomfort. *See id.* at 326. In August of the same year, Plaintiff underwent bladder surgery at St. Elizabeth's hospital. *See id.* at 373.

Afer expressing that she was experiencing pain in her left knee, that moved down to her left foot, Plaintiff was seen by consulting physician Dr. Kalyani Ganesh, referred by the Division of Disability Determination. In his report dated September 3, 2010, Dr. Ganesh concluded that Plaintiff did not suffer from any limitations in sitting, standing, walking or use of upper extremities. *See id.* at 376. Dr. Ganesh noted the pain that Plaintiff was experiencing in her left knee was possibly the result of an anterior cruciate ligament tear. *See id.* at 373. Dr. Ganesh also noted the tenderness Plaintiff was experiencing in her lower abdomen resulting from her recent surgeries and the pain that Plaintiff experienced in her hands. *See id.* at 373, 376. Even so, Dr.

Ganesh did not find Plaintiff to have any severe bodily limitations that would hinder her ability to perform sedentary work. *See id.* at 376.

Just over a year later, on September 13, 2011, Plaintiff was examined by Dr. Thyra Johnson, where it was noted in a report that an x-ray of Plaintiff's left knee revealed moderate-to-severe arthritic changes, particularly in the medial compartment with medial joint space narrowing. *See id.* at 415, 417. Dr. Johnson indicated, however, that Plaintiff was not a candidate for knee arthroscopy and, because her symptoms were not severe enough, Plaintiff was also not a candidate for a total knee replacement. *See id.* at 418.

On September 19, 2011, Plaintiff was examined by Dr. Tatyana Misyulya of the St. Elizabeth Medical Group. *See id.* at 427-28. In her evaluation, Dr. Misyulya noted that Plaintiff complained of back pain and muscle spasms, which an MRI attributed to showings of multiple degenerative changes of the facets and a tiny left paracentral herniated disk.[1] *See id.* at 427. Dr. Misyulya recommended that Plaintiff attend physical therapy and occupational treatment, and also prescribed her Flexeril in order to alleviate her pain. *See id.*

In a "Medical Source Statement of Ability to do Work-Related Activities," Dr. Misyulya listed what she believed to be Plaintiff's physical limitations as a result of her alleged physical impairments. *See id.* at 447-452. Although Dr. Misyulya indicated that Plaintiff was only able to sit for approximately two hours out of an eight hour day at ten to fifteen minute increments, and that she was only able to stand and walk for a total of two hours out of an eight hour day, Dr. Misyulya did not list any other work-related limitations resulting from Plaintiff's physical

---

[1] In an earlier report dated September 13, 2011, after examining the scans of Plaintiff's back, Dr. Parvez Asmat determined that there were only borderline changes to the spinal stenosis. *See* R. at 421

-4-

condition. *See id.* at 448, 452. Additionally, nowhere in the report did Dr. Misyulya indicate that Plaintiff was unable to return to her previously held job as a bank loan officer. *See id.* at 447-52.

Additionally, in a report dated September 12, 2011, Dr. Freedman, who evaluated Plaintiff after she expressed pain in her left knee and lower extremities, noted that the arthritic changes that were found in Plaintiff's knee were likely not the cause of her pain, and that it was most likely attributed to issues relating to her lower back. *See id.* at 431.

On September 23, 2011, Plaintiff was examined by Dr. Rudolph Buckley, during which he identified the physical conditions that had been previously highlighted by Dr. Meeks and Dr. Misyulya, such as degenerative disk disease and facet disease. *See id.* at 441-44. However, Dr. Buckley concluded that, based on the relatively moderate severity of Plaintiff's conditions and due to her obesity, she was not a candidate for spinal surgery. *See id.* at 444. Additionally, Dr. Buckley recommended that Plaintiff undergo physical therapy and that she receive injections for her facet disease, which he believed would control a significant amount of her pain. *See id.*

**B.     Psychological conditions**

Based on a psychological evaluation conducted by Dennis M. Noia, M.D., he determined that Plaintiff suffered from Anxiety Related-Disorder, but that such an impairment was not classified as severe. *See id.* at 381. In his report dated September 3, 2010, Dr. Noia indicated that Plaintiff had neither a history of psychiatric hospitalizations nor a history of any outpatient psychiatric treatment. *See id.* at 377. Although Dr. Noia noted that Plaintiff appeared to be anxious and that her mood was slightly tense and apprehensive, her prognosis was fair to good, and recommended that she continue with her then prescribed pharmacological treatment. *See id.* at 479-80.

Additionally, in a psychiatric review conducted on September 9, 2010, Dr. Andrews found that although Plaintiff showed signs of Anxiety Disorder NOS (Not Otherwise Specified), it was not classified as severe and thus, she did not suffer from any medically determinable psychiatric impairments. *See id.* at 381, 386, 393.

**C.    The ALJ's decision**

On December 16, 2011, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled within the meaning of the Act. *See id.* at 9-18. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2007. *See id.* at 14. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbosacral spine; and degenerative joint disease of the left knee. *See id.* In so finding, the ALJ considered Plaintiff's diagnosed anxiety disorder, but, giving weight to the opinion of Dr. Andrews, found that there were not any medically determinable psychiatric impairments. *See id.* at 15. At step three, the ALJ found that none of Plaintiff's severe impairments met or medically equated the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* Next, the ALJ found that, throughout the relevant period, Plaintiff had residual functional capacity to perform the full range of sedentary work.[2] *See id.* At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a bank loan officer. *See id.* at 18.

---

[2] Sedentary work is defined as work that involves lifting no more than 10 pounds at a time, and is performed primarily while sitting, though walking and standing may be required occasionally. 20 C.F.R. §§ 404.1567(a), 416.967(a).

# III. DISCUSSION

**A.     Plaintiff's arguments**

In her brief, Plaintiff argues that the Commissioner erred in finding that she had the residual functional capacity for work, permitting her to perform past relevant sedentary work as a bank loan officer. *See* Dkt. No. 11 at 7. Plaintiff argues that the Commissioner should have applied the Grid Rules (Rule 202.6), which would have deemed Plaintiff, age 58 at the time of the hearing, unable to perform sedentary work, entitling her to a favorable ruling. *See id.* Plaintiff further contends that the ALJ failed to give value to the medical opinion of Plaintiff's treating physician, Dr. Misyulya, as well as those medical reports that further supported the treating physician's opinion. *See id.* at 9 ("Therefore, we are dealing with the claimant with a very serious low back condition which is verified by positive MRI findings and which correlates with positive findings of various doctors . . . [and] that this medical evidence strongly supports the conclusion of attending physician Dr. Misyulya"). Plaintiff also alleges that the ALJ committed reversible error in failing to properly utilize the factors of SSR96-2p and 10 C.F.R. §§ 404.1502 and 416.902, in failing to give controlling weight to the opinion of Dr. Misyulya as a treating source. *See* Dkt. No. 11 at 11.

**B.     Standard of Review**

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)). In this analysis, the claimant has the burden of proof as to the first four steps, while the Commissioner has the burden of proof on the fifth step. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir. 1984).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment

-8-

for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**C.     Treating Physician Rule**

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *See Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence." *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c).

Although the ALJ need not explicitly consider each of the factors listed in 20 C.F.R. § 404.1527(c), it must be clear from the ALJ's decision that a proper analysis was undertaken. *See Petrie v. Astrue*, 412 Fed. Appx. 401, 406 (2d Cir. 2011) ("[W]here 'the evidence of record

permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'"; *Hudson v. Colvin*, 5:12-CV-0044, 2013 WL 1500199, *10 n.25 (N.D.N.Y. Mar. 21, 2013) ("While [the ALJ] could have discussed the factors listed in the regulations in more detail, this does not amount to reversible error because the rationale for his decision is clear and his ultimate determination is supported by substantial evidence."), *report and recommendation adopted*, 2013 WL 1499956 (N.D.N.Y. Apr. 10, 2013). Failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 Fed. Appx. 74, 77 (2d Cir. 2012) (citations omitted).

Before determining whether the Commissioner's decision is supported by substantial evidence, the court "must first be satisfied that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations and alterations omitted); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record"). The ALJ has a threshold duty to adequately develop the record before deciding the appropriate weight to give the treating physician's opinion. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *Hinds v. Barnhart*, No. 03-CV-6509, 2005 WL 1342766, *10 (E.D.N.Y. Apr. 18, 2005) ("The requirement that an ALJ clarify a treating source's opinion that a claimant is unable to work is part of the ALJ's affirmative obligation to develop a claimant's medical history"); *Pabon v. Barnhart*, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) ("[T]he duty to

develop a full record . . . compels the ALJ . . . to obtain from the treating source expert opinions as to the nature and severity of the claimed disability . . . . Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties . . . under the treating physician rule") (alternations in original). "Because of the considerable weight ordinarily accorded to the opinions of treating physicians, an ALJ's duty to develop the record on this issue is 'all the more important.'" *Rocchio v. Astrue*, No. 08-CV-3796, 2010 WL 5563842, *11 (S.D.N.Y. Nov. 19, 2010) (citation omitted), *report and recommendation adopted*, 2011 WL 1197752 (S.D.N.Y. Mar. 28, 2011). An ALJ's "failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case." *Green v. Astrue*, No. 08-CV-8435, 2012 WL 1414294, *14 (S.D.N.Y. Apr. 24, 2012) (citing *Moran*, 569 F.3d at 114-15), *report and recommendation adopted*, 2012 WL 3069570 (S.D.N.Y. July 26, 2012).

**D.     Application**

   *1. The ALJ gave the proper weight to the opinion of Dr. Misyulya*

In the present case Plaintiff argues that the ALJ erred in failing to give controlling weight to the medical opinion of her treating physician Dr. Misyulya. Specifically, Plaintiff contends that the opinion of Dr. Misyulya is "supported by the positive findings in the clinical examinations of the other doctors previously referenced . . . [and] is not inconsistent with other substantial evidence in the case record." *See* Dkt. No. 11 at 11, 14. However, the ALJ properly determined that the opinion of Dr. Misyulya, who Plaintiff identified as her treating physician and whose opinion is generally given deference, was not supported by the opinions of any other medical examiners. *See generally Halloran v. Barnhart*, 362 F.3d 28 (2d Cir. 2004); *see* R. at 447-52. Based on the application of the five factors listed under 20 C.F.R. § 404.1527(c), which

are used to determine the efficacy of a treating physician's opinion, controlling weight was not owed to the medical opinion of Dr. Misyulya. *See e.g., Crayton v. Astrue*, 944 F. Supp. 2d 231, 235 (W.D.N.Y. 2013) ("[T]here are no objective medical tests or reports supporting the level of postural and manual disability in [treating physician's] report . . ."). Dr. Misyulya, like the consulting physician Dr. Ganesh, and many of the other physicians who examined Plaintiff, only had one opportunity to evaluate Plaintiff before the hearing in front of the ALJ. *See* R. at 374-75, 427-28, 452. After just one examination by Dr. Misyulya, the relationship that existed between Plaintiff and her "treating physician," would not have been any more extensive than the patient-doctor relationship that existed between Plaintiff and Dr. Ganesh at the time of the hearing. *See* R. at 374-75, 427-28, 452. There is no evidence present in the administrative record that indicates that any other physician who examined Plaintiff and who diagnosed her with the same conditions that were noted by Dr. Misyulya, felt as though Plaintiff should be confined to the limited scope of activities that Dr. Misyulya believed Plaintiff was capable of. *See id.* at 374-76, 427-28, 441-45, 447-52. In fact, the findings of Dr. Misyulya directly contradict the findings of Dr. Ganesh in terms of the daily working activity that he believed Plaintiff had the capacity to perform. *See id.* at 374-76. Additionally, in the medical report from Dr. Rudolph Buckley, he indicated that most of the pain that Plaintiff was experiencing was associated with standing and walking and that sitting alleviates some of her back and foot pain. *See id.* at 441. Furthermore, nowhere within the record is it indicated that Dr. Misyulya is a specialist within this particular field of medicine. Rather, Dr. Misyulya identifies herself as a "family practice physician." *See id.* at 452. Based on the Administrative Judge's decision, it is not apparent that any other factors were brought to the Social Security Administration's attention that tend to support the opinion of

Dr. Misyulya. *See id.* at 12-18. As made clear by the administrative record, no other evidence was presented to the ALJ that would tend to support Dr. Misyulya's opinion.

Moreover, according to the distinctions between a "treating source" and a "nontreating source" established in 20 C.F.R. § 404.1502, Dr. Misyulya should not have been recognized as Plaintiff's treating physician. *See also* 20 C.F.R. § 416.902. Although Plaintiff alleges that Dr. Misyulya was her treating physician, in actuality, at the time of the hearing, Plaintiff had only been examined by Dr. Misyulya on one occasion, which under 20 C.F.R. § 404.1502 categorizes Dr. Misyulya as a nontreating source.[3] *See* Dkt. No. 11 at 11; *see* R. at 427-28, 452. Additionally, under 20 C.F.R. § 404.1502, Dr. Ganesh, as the consulting physician for the ALJ, would also be recognized as a nontreating source,[4] thereby establishing an equal weight to the authority of the medical opinions of Dr. Misyulya and Dr. Ganesh. *See* R. at 374-75.

Based on the foregoing, the Court finds that the ALJ properly declined to afford Dr. Misyulya's opinion controlling weight.

### *2. The ALJ properly determined Plaintiff's residual functioning capacity*

Plaintiff also argues that Medical Vocational Rule 202.06 ("Grid Rules") should have been applied and that its application would have rendered her disabled under the Act. *See* Dkt. No. 11 at 7. Plaintiff's argument is without merit.

---

[3] "Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you." *See* 20 C.F.R. § 404.1502.

[4] "Nontreating source . . . includes an acceptable medical source who is a consultative examiner for [the Social Security Administration], when the consultative examiner is not your treating source." *See* 20 C.F.R. § 404.1502.

In the application of the five-step sequential evaluation under 20 C.F.R. § 404.1520(a), the ALJ determined that Plaintiff was not disabled under these regulations because she possessed the residual functioning capacity to perform her past relevant work as a bank loan officer under step four. *See id.* at 15 ("In comparing the claimant's residual functioning capacity with the physical and mental demands of [a bank loan officer], the undersigned finds that the claimant is able to perform it as actually and generally performed"). Because Plaintiff was found capable of performing past relevant work, the ALJ was not required to move on to step five of the sequential evaluation. *See* R. at 14. Only when it is determined that an individual does not posses the residual functioning capacity to perform past relevant work at step four is the ALJ required to conduct an analysis under step five. *See Melillo v. Astrue*, No. 7:06-CV-698, 2009 WL 1559825, *22 (N.D.N.Y. June 3, 2009) (citations omitted). Rule 202.06 of the Grid Rules only potentially applies if a claimant reaches step five of the sequential evaluation. *See Draegert v. Barnhart*, 311 F.3d 468, 475 (2d Cir. 2002) ("Grid Rules presume a person to be disabled if he is advanced of age [age 55 or older], *has severe medical impairments precluding his return to his prior work*, and has a limited or no education, unless he has 'a particularly transferable skill. . . .'") (emphasis added); *see also Jones v. Astrue*, 2009 WL 3871641, *4-5 (W.D.N.Y. 2009) ("According to [the] **Grid** rule . . . [t]he adversity of functional restrictions to sedentary work at advance **age** (**55** and over) for individuals with no relevant past work or who can not longer perform vocationally relevant past work and have no transferable skills, warrants a finding of disab[ility] . . .") (emphasis in original); *Melillo*, 2009 WL 1559825, at *22 . Since the ALJ determined that Plaintiff had the residual functioning capacity to perform past relevant work as a bank loan officer and did not proceed to step five, application of the Grid Rules in this case was unnecessary. *See* R. at 18.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioners motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED** and Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision denying DIB is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the Commissioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in according with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 30, 2014
       Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge